IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEFF JOHNSON,<br><br>                  Plaintiff,<br><br>v.<br><br>MISSION SUPPORT, et al.,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL ON HIS FIFTH DISCOVERY REQUEST (Docket No. 119)**<br><br>Case No.  2:08-CV-00877-DN-EJF<br><br>District Judge David Nuffer<br><br>Magistrate Judge Evelyn J. Furse |

Jeff Johnson moved this Court[1] to compel Mission Support Inc. (Mission Support) to provide more complete responses to his fifth discovery request. (Docket No. 119.) The Court has carefully read the Motion and Memoranda submitted for and against Johnson's Motion to Compel on His Fifth Discovery Request and heard oral argument on December 4, 2012. This Court now grants in part and denies in part the Motion.

**Failure to Meet and Confer**

Mr. Johnson did not raise any issue as to the following requests for production of documents before bringing this Motion: request numbers 6 and 16. Mr. Johnson did not raise any issue as to the following requests for admission before bringing this Motion: request numbers 5, 8, and 13. With respect to document request numbers 2, 4, 20, 24, 25, and 27, Mr. Johnson raised a concern (January 18, 2012 letter, Docket No. 121-2), Mission Support agreed to

---

[1] On October 5, 2010, District Judge Dee Benson referred this case to Magistrate Judge David Nuffer under 28 U.S.C. section 636(b)(1)(A). (Docket No. 28.) On March 31, 2012, the case was reassigned from Judge Benson to newly appointed District Judge David Nuffer. (Docket No. 126.) On May 21, 2012, Judge Nuffer reassigned the referral to Magistrate Judge Evelyn J. Furse. (Docket No. 143.)

1

amend its response (January 30, 2012 letter, Docket No. 121-3) and did (February 13, 2012 Supplemental Responses, Docket No. 121-4), and Mr. Johnson did not raise any issues with the amended response prior to bringing the motion. Regarding document request number 9, Mr. Johnson did not raise an issue as to phrasing of the response to this request before bringing this Motion. In all of these instances, Mr. Johnson failed to meet and confer as required by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37-1. Therefore the Court DENIES Mr. Johnson's motion to compel document request numbers 2, 4, 6, 9, 16, 20, 24, 25, and 27, and requests for admission numbers 5, 8, and 13.

**No Assertion of Privilege**

Mr. Johnson requests the Court order production of a privilege log for a number of document requests: 5, 11, 12, and 14. However, Mission Support never asserted privilege in response to those document requests. On that basis, the Court DENIES Mr. Johnson's motion to compel a privilege log for those requests.

**Document Requests**

*Document Request No. 1*: This request seeks documents "that would show, indicate or estimate the quantity of P/N 3-65836 springs . . . ." (Docket No. 121-1.) Mission Support objects to this phrasing as requiring an implicit admission that documents produced "show, indicate or estimate" the quantity of these particular springs and that it does not necessarily share the same view of what documents would estimate the quantities. (*Id.*) Mission Support has stated that despite its objections, it has produced all documents responsive to this request. The Court recognizes this problem and resolves it by requiring Mission Support to revise the wording of its amended responses to the request to reflect the documents it did produce.

This request apparently seeks a subset of information sought by Mr. Johnson's other document requests. While Mission Support does have an obligation to identify documents in compliance with Rule 34, Mr. Johnson appears to be attempting to have a second bite at the apple, by making a request that would require identification of a subset of documents already produced. The Court will not order identification under these circumstances. Mission Support should identify the prior relevant document request or requests to provide greater clarity to Mr. Johnson.[2] This Court ORDERS Mission Support to amend its response to make clear it produced all such documents and to indicate to which previous document request it produced the documents relevant to this request.

***Document Request No. 3:*** This request seeks all documents showing the amounts paid between February 9, 2006 and June 11, 2009 for magnetic particle testing of P/N 3-65836 springs. Mr. Johnson did attempt to meet and confer with Mission Support on request number three and received the clear response that Mission Support thought the request sought information not relevant to the case or likely to lead to admissible evidence. In its Opposition, Mission Support notes that the Amended Complaint does not allege Mission Support ignored magnetic particle testing, which Mission Support conducted offsite, out of Mr. Johnson's purview. Rather, the Amended Complaint challenges compression testing, which Mission Support conducted onsite, where Mr. Johnson could have and claims to have observed problems. Mr. Johnson suggests that because he alleges Mission Support violated the False Claims Act because complying with it was too expensive, he is entitled to discovery about the company's costs and revenues during this period. This claim sweeps too broadly and would bring all

---

[2] For example, Mission Support can respond "Mission Support produced all documents relating to the quantity of P/N 3-65836 springs used in or installed in any KC-135 recoil assemblies from February 9, 2006 to the present in response to Discovery Request #__, Document Request # __."

documents related to Mission Support's entire operation within the scope of discovery. The False Claims Act does not provide for such a result. The Court agrees the request is overbroad to the extent it seeks documents related to payments for a test not identified in the Complaint. *See Lemmon v. Envirocare,* No. 2:02-cv-904, Order at 3, March 16, 2012 (holding "the scope of permissible discovery is restricted within the four corners of Plaintiffs' Complaint"); *U.S. ex rel. Carter v. Halliburton Co.,* No. 1:08-cv-1162, 2009 WL 2240331, *9 (E.D. Va. July 23, 2009) (dismissing generalized claims because of concern of creating a fishing expedition in discovery but permitting specific claims to proceed). The Court cannot see how the cost of that testing bears on the allegations in the Complaint. Therefore, the Court DENIES the Motion as to this request.

*Document Request No. 5*: While Mission Support has clarified its responses to this document request in the meet and confer letter as well as in the briefing on this Motion, it has not amended its response to include the clarifications. This Court ORDERS Mission Support to amend its response to include those clarifications. Those amendments carry greater significance than meet and confer letters because the client must verify them. Rule 34 requires this much.

*Document Request No. 7*: Mr. Johnson phrased this request as seeking documents "that would demonstrate that the 'lag time,' or the time it would take from placing an order for P/N 3-65836 springs that would be integrated in or installed in KC-135 recoil assemblies until they arrived at MCI." (Docket No. 121-1.) The phrasing of this request does make responding to it a challenge. The Court recognizes this problem and resolves it by requiring Mission Support amend its response and revise the wording to say something like ". . . Mission Support produced [does not have] documents that relate to a time lag in ordering P/N 3-65836 springs."

Mission Support has affirmatively stated that it has produced documents showing it ordered no springs while Mr. Johnson worked there because it had significant inventory since 2005, of which it did produce documentation. No time lag before 2005 would have caused what Mr. Johnson claims to have observed. Mission Support did respond by stating that no such documents exist for the period between February 9, 2006 through June 11, 2008. The Court can imagine that a subsequent time lag in ordering may have caused Mission Support to economize on its usage during the end of Mr. Johnson's tenure but only for a limited time and not up through the present. Therefore, the Court imposes a time frame on this request from February 9, 2006 to January 31, 2009. The Court ORDERS Mission Support to amend its response to conform to these parameters and produce additional documents, if any exist within 14 days of this Order.

*Document Request No. 8*: Mission Support sought to limit the time frame of this response to one incident on January 8, 2008. While this Court does limit discovery based on the Complaint, Mr. Johnson did identify Mr. Liddiard in the context of one incident in the complaint and may call him as a witness. Mr. Johnson limited the request to Mr. Liddiard's unsatisfactory or nonconforming work only on B-52 bypass intake ducts. Thus, the information sought may lead to the discovery of admissible evidence and is sufficiently narrow.

Mr. Johnson phrased this request as seeking "documents that would show that employee Delwyn Liddiard produced any unsatisfactory or nonconforming work on any B-52 bypass intake ducts from February 9, 2006 to the present, or that any corrective action was taken as a result thereof . . . ." (Docket No. 121-1.) The phrasing of this request makes responding to it a challenge. The Court requires Mission Support to amend its response and revise the wording to say something like ". . . Mission Support produced [does not have] documents that relate to any

unsatisfactory or nonconforming work produced by Delwyn Liddiard on any B-52 bypass intake ducts from February 9, 2006 to the present or any corrective action taken as a result thereof." With this rephrasing, Mission Support's concerns about revealing attorney work product disappear.

Mission Support's meet and confer letter seems to indicate that it previously produced documents responsive to this request. While Mission Support does have an obligation to identify documents in compliance with Rule 34, Mr. Johnson appears to be attempting to have a second bite at the apple, by making a request that would require identification of a subset of documents already produced. The Court will not order identification under these circumstances. The Court does order Mission Support to identify the prior relevant document request or requests under which it produced the documents previously to provide greater clarity.

This Court ORDERS Mission Support to amend its response and production as necessary to conform with these rulings within 14 days of this Order.

*Document Request No. 11*: Mr. Johnson objects to the response to this request as ambiguous, and the Court agrees. Mission Support responds that it has produced portions of the drawings sought and then says it has produced the drawings sought. In its meet and confer letter and in briefing on the issue, Mission Support asserts it has produced portions of the drawings mentioned in the e-mail. Neither party submitted the e-mail to the Court. Thus the Court cannot determine to what the e-mail refers or whether the response meets the request. The Court ORDERS Mission Support to amend its response to clarify whether it has produced all of the drawings referenced in the e-mail or just a portion of them within 14 days of this Order.

*Document Request No. 13*: This Court ordered Mr. Johnson to identify the jo-bolt to which he refers in his Complaint in relation to Document Request No. 10 in his First Set of

Discovery. (Docket No. 165, Order, Jan. 16, 2013.) Once he has provided that clarification, Mission Support has fourteen days to amend its response and provide any additional responsive documents.

If Mission Support previously produced documents responsive to this request it should identify the prior relevant document request or requests under which it produced the documents previously to provide greater clarity. If it produces new documents, it should identify them by document control number.

***Document Request No. 15*:** Mission Support states in its opposition that it "has already produced the Statement of Work ('SOW')." (Docket No. 121-1.) The e-mail at issue appears to refer to both an existing SOW and a new SOW for the B-52 bypass ducts at issue, both in effect at different times during Mr. Johnson's employment. It also refers to a number of other documents apparently setting guidelines or instructions for work Mission Support will complete on the B-52 bypass ducts. Because Mr. Johnson has only alleged fraudulent claims with respect to the substitution of aluminum rivets for steel jo-bolts on B-52 by-pass intake ducts, the Court ORDERS Mission Support to produce such documents and amend its response to reflect the change only to the extent such documents relate to the aluminum rivets or steel jo-bolts referenced in the Complaint.

This Court ordered Mr. Johnson to identify the jo-bolt to which he refers in his Complaint in relation to Document Request No. 10 in his First Set of Discovery. (Docket No. 165, Order, Jan. 16, 2013.) Once he has provided that clarification, Mission Support has fourteen days to amend its response and provide any additional responsive documents as to the B-52 by-pass intake duct jo-bolts and aluminum rivets.

***Document Request No. 19***: Mr. Johnson seeks *all* documents regarding "weld testing results and the testing criteria for all welding performed on B-52 bypass intake ducts." (Docket No. 121-1.) He asserts the information is relevant to his allegation in the Complaint that Mr. Liddiard tried to cover up a mistake in "installing a rivet in the KC-135 Bypass Intake Duct assembly[3] and cracking a part." (Am. Compl. ¶ 34, Docket No. 78.) The Complaint alleges Mr. Liddiard attempted to cover up the mistake by having the crack welded. (*Id*.) A request for all welding on the B-52 bypass intake ducts for almost three and a half years to look for evidence of use of an aluminum rivet instead of a steal jo-bolt is overbroad without any further evidence. Mr. Johnson has not put forth any evidence to suggest an alleged illicit welding would have been subject to weld testing. Under these circumstances Mr. Johnson has not persuaded the Court that weld testing results and testing criteria for all welding performed on B-52 bypass intake ducts have any relevance to illicit welding to cover up mistakes such as that alleged. The Court upholds Mission Support's over breadth, irrelevance, and scope objections. The Court DENIES the Motion as to this request.

***Document Request No. 22***: While Mission Support has clarified its responses to this document request in the meet and confer letter as well as in the briefing on this Motion, it has not amended its response to include the clarifications. This Court ORDERS Mission Support to amend its response to include those clarifications. Those amendments carry greater significance than meet and confer letters because the client must verify them. Rule 34 requires this much.

***Document Request No. 23***: The Court agrees that this request is overbroad in its attempt to obtain all documents related to any changes in the work processes, production, overhaul, or

---

[3] Mr. Johnson appears to have made a typographical error in referring to a KC-135 bypass intake duct instead of a B-52 bypass intake duct. If the Complaint correctly referenced a KC-135 bypass intake duct, the requested documents have even less relevance to the case.

refurbishing of B-52 bypass intake ducts and KC-135 recoil assemblies. Because Mr. Johnson has only alleged fraudulent claims with respect to the substitution of aluminum rivets for steel jo-bolts on B-52 by-pass intake ducts and replacement of the 3-64729 centering pins[4] and 3-65836 springs in the KC-135 recoil assemblies, the Court will only require Mission Support to respond to this request with respect to the changes in the work processes, production, overhaul, or refurbishing of the B-52 bypass intake duct jo-bolts and rivets specified by Mr. Johnson, and the KC-135 recoil assembly 3-64729 centering pins and 3-65836 springs.

This Court ordered Mr. Johnson to identify the jo-bolt to which he refers in his Complaint in relation to Document Request No. 10 in his First Set of Discovery. (Docket No. 165, Order, Jan. 16, 2013.) Once he has provided that clarification, Mission Support has fourteen days to amend its response and provide any additional responsive documents as to the B-52 by-pass intake duct jo-bolts. The Court ORDERS Mission Support to produce the responsive documents concerning the KC-135 recoil assembly springs within fourteen days of this Order.

**Requests for Admission**

*Request for Admission No. 1*: This request sweeps broadly in seeking an admission that "there are KC-135 recoil assembly travelers that have no certification forms for magnetic particle inspections" (Docket No. 121-1) for a particular set of contracts. Mission Support objects to the request as overbroad because magnetic particle inspection does not form a basis for the Complaint and as vague because it does not specify to which exact travelers it pertains. This Court has great suspicion about the admissibility at trial of any answer to this request. Nonetheless, the request is intelligible and has some potential to lead to admissible evidence. In

---

[4] To the extent the parties agree the centering pins no longer present a viable claim, Mission Support does not need to produce documents relating to them. *See* Mem. in Opp'n to Relator's Mot. to Compel on His Disc. Requests 1-4, Ex. E (Docket No. 110-5).

particular, magnetic particle testing was the next step in the process after compression testing for the springs at issue.  Thus, the existence of documentation of magnetic particle testing would tend to show the springs proceeded through the process.  By asking if springs sometimes proceeded through the process without documentation, Mr. Johnson tests his theories and Mission Support's potential defenses.  Furthermore, a request for admission as compared to a document request often imposes a significantly smaller burden on the responding party as it does in this instance.  For example, if Mission Support knows of instances where KC-135 recoil assembly travelers for the stated contracts lacked certification forms for magnetic particle inspections, then all it needs to do is admit the request.  The Court will impose a date restriction on the Request for the period of Mr. Johnson's employment.  With that alteration, the Court ORDERS Mission Support to respond.

*Request for Admission No. 10*:  Mission Support objected to this request as overbroad, compound, irrelevant, outside the scope, vague, and ambiguous.  This Court finds this request unintelligible.  While the Court will allow some inquiry into the documentation of magnetic particle inspections, the compound form of the request makes it so difficult to understand that the Court cannot determine whether it makes a relevant inquiry.  The Court will not reform the request because what it appears to seek on its face seems quite different from what Mr. Johnson claims it seeks in his meet and confer letter.  Under these circumstances, the Court sustains Mission Support's objection to this request as vague and ambiguous and DENIES the motion to compel a response.

*Request for Admission Nos. 11&12*:  Mission Support's lack of response to these Requests based on its objections does not comply with Federal Rule of Civil Procedure 36.  Request number 11 asks Mission Support to "[a]dmit that MSI violated its own policies and

procedures by not documenting the use, substitution, replacement, or scrapping of P/N 3-65836 springs on the Inspection Pick-Up sheets." (Docket No. 121-1.) Request number 12 asks Mission Support to "[a]dmit that MSI violated the contract by not documenting the use, substitution, replacement, or scrapping of P/N 3-65836 springs on the Inspection Pick-Up sheets." (*Id.*)

Mission Support objected to the requests as overbroad, irrelevant, compound, outside the scope, vague, and ambiguous. Through the meet and confer letters, Mission Support stood by its objections because Mr. Johnson "failed to identify the 'policies and procedures' [and] 'the contract'." (Docket No. 121-2.)

The phrases "policies and procedures" and "the contract" are not so ambiguous, at this late stage in the litigation, so as to prevent a response. Federal Rule of Civil Procedure 36 requires the responding party to admit, qualify, or deny as necessary to provide a fair response to the substance of the request. Mission Support can qualify its response by providing its own definitions of "policies and procedures" and "contract" and respond as completely as it can.

In its Opposition, Mission Support objects for the first time that the requests improperly call for a legal conclusion. Rule 36 also specifies that a party may ask for admissions relating to "facts, application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(a)(A). Further no party may object on the ground the request presents a genuine issue for trial. These requests seek admissions about the application of law to fact, not abstract questions of law. *See Stark-Romero v . Nat'l R.R. Passenger Co.,* 275 F.R.D. 551, 553-54, 558 (D. N. Mex. 2011) (collecting cases and noting approval of RFA seeking admission of certain behavior as required by regulation). Requests 11 and 12 seek admissions that Mission Support did not take certain actions and that its failure violated either its policies or contract. As such, these requests seek the

application of law to fact, and Mission Support must respond within 14 days of the signing of this Order.

*Request for Admission No. 16*:  As set forth with respect to Request for Admission No. 1, the Court finds that the documentation of magnetic particle inspection testing may have some relevance to this case and given the relatively lesser burden of a request for admission, the Court overrules the objection and ORDERS Mission Support to respond within 14 days of the signing of this Order.

**Requests for Inspection**

*Request for Inspection No. 1*:  Mr. Johnson seeks to inspect "all emails to and from" ten Mission Support employees from February 9, 2006 to the present.  Mission Support objects to this request on a variety of bases including its burdensomeness and over breadth.  This request is clearly over broad.  In his meet and confer letter, Mr. Johnson limits the request to e-mails related to Mr. Johnson and B-52 intake ducts and KC-135 recoil assemblies.  He further states that he seeks to search the computers himself because Mission Support has not produced any e-mails about Mr. Johnson.  Mission Support responded that it has already responded under oath that it has "produced all non-privileged emails that refer or relate to Jeff Johnson."  (Docket No. 121-2.)  In his Motion, Mr. Johnson re-expands his request to also include disposal of waste water or chemicals.

As set forth in the Court's January 16, 2012 Order, disposal of waste water or chemicals does not fall within the scope of discovery in this case.  (Docket No. 165.)  Furthermore, as set forth above, only very particular parts of the B-52 intake ducts and KC-135 recoil assemblies fall within the scope of discovery.  Moreover, Mr. Johnson has not provided any reason to request a computer search for these documents as opposed to a more appropriate document request.  With

respect to e-mails about Mr. Johnson, the absence of any e-mails about him, by itself, is not enough for this Court to allow Mr. Johnson to inspect Mission Support's computer system. Mr. Johnson has to provide some evidence, other than conjecture, that such e-mails exist, and Mission Support failed to produce such evidence. Mr. Johnson could obtain that type of evidence through deposition testimony, affidavit, or other documents referencing such communications. For these reasons, the Court DENIES the Motion as to request for admission number 1.

**Attorney Fees**

This Court again declines to award attorney fees in connection with this Motion to Compel because it has found both parties to have legitimate arguments. However, the Court warns Mr. Johnson's counsel that he must take the meet and confer requirement seriously and that he should take greater care in preparing his motions. As noted above and in the previous Order, the Court will not even consider discovery disputes if the parties have not engaged in a meaningful meet and confer. Mr. Johnson's counsel has been quick to motion the Court without explaining his position to Mission Support. That practice wastes everyone's time. If this happens again, the Court will sanction Mr. Johnson. Furthermore, Mr. Johnson's motions lack compelling explanations and reference to case law that would assist the Court. Instead, the Court has had to interpret Mr. Johnson's arguments. When a party places the Court in that position, the result may not meet the party's expectations.

For the reasons sets forth above, the Court Grants this Motion in Part and Denies this Motion in Part.

SO ORDERED this 28th day of January, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge